May it please the Court, my name is David Russell, Pro Bono Counsel for Appellant Kevin Cooper, and I'd like to reserve six minutes of my time for rebuttal. All right, I'll try to help you out though. Thank you very much. You see the clock is there as well. Thank you very much, Judge McKeown. Mr. Cooper brought this appeal because the District Court erred by dismissing Mr. Cooper's action for lack of subject matter jurisdiction. Before we get to that, why didn't you appeal or seek a writ of mandate from the California Supreme Court from the unfavorable decision rendered by the San Diego Superior Court? And with regards to the 1405 petition? Yes. Your Honor, we were not actually counsel in that proceeding, so I can't speak directly to it. I don't have any inside knowledge about why that wasn't sought. But you're essentially now asking us to overturn the decision of that court under the guise of seeking relief in this 1983 action, and that is problematic for you under Rooker-Feldman. Your Honor, I don't think that there's a Rooker-Feldman problem here. And first of all, as this Court knows, it's a very narrow doctrine, and it only applies when this two-factor test is met, and that's when the federal plaintiff asserts a state court legal error as his remedy and then seeks relief from the state court judgment as his remedy. And the error that you are alleging here is an entitlement to additional DNA testing under Section 1405, and that was a ruling rendered by the San Diego Superior Court after a full evidentiary hearing at which it made a determination under the, what is it, eight-factor test in the statute, that Mr. Cooper did not merit relief under the statute because he couldn't meet all the factors. Well, first, Your Honor, Mr. Cooper isn't alleging that the state court erred here. Mr. Cooper is alleging wrongful conduct by Defendants Myers and Defendants Ramos. But that conduct was squarely before the San Diego Superior Court when Judge Soe heard and considered the battle of the experts and determined that your expert was not credible and that the state's expert was. Your Honor, I don't believe that is dispositive, and I would turn to the, or point to the Cugazian case. And the district court in its order interpreted the Cugazian case as an extrinsic fraud exception to Rooker-Feldman. But this is not extrinsic fraud. It was intrinsic fraud that you raised and litigated before the San Diego County Superior Court. And you, in addition, you said in paragraph 60 of your complaint, because plaintiff has met all of the factors enumerated in 1405, he has a legitimate claim of entitlement to testing under 1405. That, to me, seems to be an allegation that basically says he should win under 1405. But, of course, we know he didn't in the state court. Why isn't that an attack on the state court determination? Well, there are a couple reasons why. Well, first of all, the relief that Mr. Cooper is seeking, the declaratory relief, is the exact relief that the Supreme Court approved of in Skinner. Well, not quite. Skinner asked for a declaratory judgment, and he had a listing of various evidence that he wanted. I think there was like six parts or something. Here, your declaratory relief basically says you're entitled to access to all the DNA under 1405. And the question I have is Skinner presents an interesting issue, because in Skinner there was actually a challenge, a facial challenge to that statute. That's what I can't find in your complaint. I recognize you're trying to thread the needle, and I appreciate that, you know, between Skinner and Rooker Feldman. But maybe you can help me out and explain what is, if there is one, the facial constitutional challenge in your case. Yes, Your Honor. Well, first of all, there are alternative challenges, procedural due process challenges here. One is the wrongful conduct of the defendants. The other is a facial constitutional challenge to the statute. And basically, as in Skinner, Mr. Cooper is challenging the California court's interpretation of Section 1405. But, you see, the difficult ñ he's not really ñ what you've tried to say here, as I read between the lines and then I read your briefs, is you're trying to say that somehow California court has made a ruling that you can't use this statute if you want to go after somebody for cooking the evidence. But that's not what the California court said. Yes, Your Honor. But reading together, I believe it's 1405 F5 and F6B, reading them together basically forecloses any prisoner who alleges that he's been framed from using the state statute to obtain any DNA evidence. Why? Well, Your Honor, the courts and the statute have held that the DNA testing has to raise a reasonable probability that in light of all the evidence, the convicted person's verdict or sentence would have been more favorable if the DNA testing had been available at the time of conviction. And we have factual findings by both the San Diego Superior Court and United States District Judge Marilyn Huff that these tests would not be more favorable because of the previous DNA testing that has already been ordered and conducted, which was inculpatory rather than exculpatory. So how can you show as a matter of fact under Sub 5 that ordering further DNA testing would be more favorable to Mr. Cooper? Well, to Mr. Cooper or to any inmate in his position who's trying to allege there's been tampering, they're never going to be able to make that showing. Why? Well, because he's trying to get evidence to prove tampering here. But all of the prior testing that has been done at his request has disproven that theory. It has been determined as a matter of fact by both state and federal judges that there has been no tampering of evidence as a result of the testing that Cooper requested the last time around. Well, I believe there has been indicia that there might have been tampering. Counsel, we've got findings of fact by both state and federal courts to the same effect, no tampering. Well, that brings me to the question following on Judge Tallman. I'm sympathetic on the Rooker-Feldman because the court's been very restrictive on the use of Rooker-Feldman. We know that. We've looked at it in two or three cases recently. Sometimes we impose it, sometimes not. If you look at Bianchi and Noel V. Hall. But the questions Judge Tallman raises go to the issue also of collateral estoppel. And a lot of times courts conflate these. And I've tried to go through here and try to look at this independently. Why, at a minimum, would those not arise in the context of collateral estoppel? Very distinct findings that, no, we find him, you know, this is credible. There is not tampering. There's not evidence. They don't need the DNA. You've had it before. And it goes on and on and on and on. Why wouldn't that come in as collateral estoppel and we should evaluate it that way? Well, Your Honor, first, this court doesn't need to affirm on other grounds. And here the district court, although this collateral estoppel issue was briefed, it didn't act on that at all. And it's simply dismissed for lack of jurisdiction. But we have more than ample record before us to make that determination, counsel. We don't need to remand this to the district court in order to determine that collateral estoppel applies. Well, Judge Tallman, I don't believe here the court has the proper evidentiary record. Counsel, we've got reams of transcripts and findings and rulings. I mean, Judge Huff wrote a 170-page memorandum order. We've got a lengthy opinion from Judge Soe on the Superior Court, all resolving these issues against Mr. Cooper. The court can certainly take judicial notice of those prior rulings in making a determination as to whether or not collateral estoppel precludes this Section 1983 end run. What would change if we sent it back to the district court on collateral estoppel? It would look at precisely what Judge Tallman has referenced. Well, right, but in terms of the 1405 proceeding, the only thing before the court is the Superior Court order. In the Hernandez case... The Superior Court order expressly incorporates by reference that evidence and those rulings that I just outlined for you. Right, but in the Hernandez case, the California Supreme Court said that to apply California collateral estoppel law, courts look carefully at the entire record from the prior proceeding, including the pleadings and the evidence. Which we have. I don't believe that that evidence is either in the district court or in this court's records. Counsel, I guess what troubles me is I'm looking at a litigant that has filed, and I think there's a footnote in Judge Soe's order, seven prior collateral challenges in the state courts plus a direct appeal. There have been at least three prior collateral challenges on federal habeas review. Now he brings a Section 1983 action. There have been eight petitions to the United States Supreme Court seeking writs of certiorari, and the question is whether or not we can look at all of that prior litigation arising out of this murder case and make a determination that collateral estoppel is appropriate here. I don't see why we can't. Your Honor, to the extent that collateral estoppel applies to the 1405 proceeding,  But it's a factual question whether or not you can meet subsections 5 and 6 of 1405, and I've got a Superior Court decision that says you cannot on the basis of all of these adverse factual findings. Well, Your Honor, that's not exactly the issue that the defendants say was the issue, the issue that should be collateral estoppel here, and they say it's the veracity and accuracy of Defendant Meyer's representation. Which was decided adversely to your position by Judge So. Your Honor. I mean, that's just another factual finding that Cooper has raised, litigated, and lost on. You know, at some point, when do we say enough is enough? Mr. Cooper, you are the poster child for abuse of the writ and vexatious litigation, and it ends here. Your Honor, I'll just state that right here was a very narrow Rooker-Feldman issue that's before the Court. No, what's before the Court is Rooker-Feldman, collateral estoppel, immunity. The whole ball of wax is in front of us. We'll get to immunity in a minute, but we've got finding after finding in the State Trial Court that there's no merit to the vague and unsubstantiated claim that the blood was planted, that there's unsupported speculation, and he's not made any showing that law enforcement personnel tampered with or contaminated evidence. So in the face of that, I'm having some trouble understanding your constitutional claim. So let me just get it straight. Your constitutional challenge, as you're now stating it, is that you could never win under 1405 for getting additional testing where the issue was tampering? Is that correct? Yes, yes, Your Honor. And could you tell me where in the superior court order it says that, that it's been interpreted that way? Well, Your Honor, the superior court never explicitly says that, but it's implied from the way the California courts have been interpreting the statute and from the language of the statute itself. So what is the best, if I could interject a question, what's the best evidence that's been presented suggesting that there has been tampering? Is this the preservative in the blood that was DNA? Your Honor, there's that. Or anything else? There's also the vial of blood that was taken from Mr. Cooper when he was arrested, and they tested that recently and they discovered that it has two different types of blood in it. And I believe, as a member of this court said, the most reasonable explanation for that is that someone used some of the blood on evidence to plant it and then topped it off. You said a member of this court said. Do you mean the dissent? The dissent, yes, Your Honor. That's not quite the same as a panel majority. If I could make one point. No, I really want to get something straight here because you're all over the map. I'm going back to your brief as to what the claim is on Rooker-Feldman, and that seems different than what you're saying now. If I could try to clarify for the court. That would be helpful. We're alleging it's two alternative claims for basically two alternative procedural due process actions. One is based on the wrongful conduct of Defendants Ramos and Myers, and that's basically a Cougasian-type claim. And the district court said Cougasian was basically just an extrinsic fraud exception to Rooker-Feldman. But if you look closer, there were four causes of action that the court found unrelated to extrinsic fraud that it said were not barred by Rooker-Feldman, even though they were previously adjudicated in state court. And this is because they alleged wrongful acts by third persons, not the court. And alternatively, our claim is that facial constitutional challenge to 1405. Okay. So let's go back to the wrongful conduct of the district attorney and the witness. Are those the two people we're talking about now? Yes, Your Honor. So Myers and the district attorney? Yes, Your Honor. And if there was wrongful conduct by them, let's take that as a claim, and why wouldn't that claim be extinguished here by collateral estoppel if I go through the very specific findings about Mr. Myers, et cetera? Well, Your Honor, the first point I have is just the point I made previously. Under the Hernandez case, this court doesn't have the proper record to make federal suffrage. Forget that point. We hear that point, but the record there pales in comparison to the boxes of record here. So let's just assume we can look through the record, which we have. My second point, Your Honor, is that the issues litigated are different. And under California collateral estoppel law, the court determining whether collateral estoppel applies is bound to the other courts, the way the other court frames or defines the issues. And here the issues were basically defined as just whether those two sections of 1405 applied to Mr. Cooper, not the veracity and accuracy of the defendant Myers' representations. Well, but implicit in the findings for the court to make the ultimate findings, they make a veracity finding, and then they also make a finding, or yet the superior court makes a finding that there's no evidence to support tampering. And so the conspiracy, it seems to me, would fail of its own weight if there's no evidence of any tampering. Well, Your Honor, I think for a collateral estoppel determination, the court doesn't need to go into that much detail here. It's just what we're doing. Well, see, the point is that we have all the detail and we can't ignore it. I mean, if you can tell me why there's some surviving claim, then I want to go look at that carefully. But one of the difficulties is the brief kind of goes like this, and then the answer comes in, so then the reply shifts ground. And now you're here, you're telling me almost a theory of constitutional claim that I've never heard before. So I'm just trying to take you at your word and go through each of these analytically, if you can understand what I'm trying to do. Yes, Your Honor. So, again, you may have a surviving claim or claims. I'm just trying to figure out what they are. So under Kagazian, you're saying that Myers and the district attorney conspired to tinker or tamper with the evidence. Is that the claim? Yes, Your Honor. And your facial challenge is that Section 1405 can never be construed to permit a remedy where there's tampering? Yes, Your Honor. Okay. Now let me ask a different point, and we'll come back. We're taking maybe a little more of your time. We'll give you some time for rebuttal. Sort of along the lines that you made with your collateral estoppel argument saying, well, we really don't have enough record, I have a question about the absolute immunity of the prosecutor here, because your answer there was confusing to me. You cited cases regarding public defenders, but do you have any authority for saying that a prosecutor acting in the course of his duties would not have absolute immunity? And your suggestion that he's not a prosecutor here because he's not prosecuting Mr. Cooper, who's already been prosecuted, didn't make any sense to me because he, in fact, as I understand it, Mr. Cooper's issues are still before the court. He has a death penalty imposed, but that may be changed if he prevails in the court. So I'm hard-pressed, one, to see why the public defender cases apply, and two, why he isn't a prosecutor here in terms of the nature of what his office is doing. I'd be happy to address that, Your Honor. We were unable to find a case that was exactly on point, but what we did find is this proposition of law propounded by this court that absolute immunity is warranted when the prosecutor acts as an advocate in initiating a prosecution and presenting the state's case. Here, that ended 25 years ago or so. And there's been no case on point whether a prosecutor or district attorney who's representing the state in a defensive proceeding like this is subject to or should be granted absolute immunity. But your theory is that the tampering occurred in the original murder trial. Well, sorry, Your Honor, but for Defendant Ramos, the allegation is that he conspired with Defendant Myers in the 1405 proceeding. But it still relates to the same evidence that was originally introduced to convict your client at the original murder trial. It relates to Defendant Myers' declaration, which does concern the evidence that was introduced at the murder trial. Why isn't that just, in Cooper's view, an overt act in furtherance of a conspiracy that you allege has been ongoing since 1985? That is part of the conspiracy we allege, Your Honor. So he's acting as a ‑‑ he's not acting as a prosecutor. I wonder what he's doing down there. He's representing the state, so to speak. He is representing the state, Your Honor, but not in obtaining a conviction. The conviction has already been obtained, and these are proceedings afterward. Well, but so is the habeas. The habeas that's been obtained, signed, sealed, and delivered by the California Supreme Court, and then the person is back, and you say, well, he's not really ‑‑ that's a civil case. And you'd say that somebody who is representing the state in a habeas case is not acting under their authority as a prosecutor by analogy? Well, Your Honor, I know the Supreme Court here has gone back to the common law principles of when the 1983 statute was first enacted and what the analogous ‑‑ who had immunity under common law then. And we didn't go into great detail to brief that issue, but we'd be happy to brief it in supplement. But would you answer my question? Would a state prosecutor in a habeas position not be acting as a prosecutor because the person has already been convicted through the state court and now they're in federal court? Your Honor, I would just state that ‑‑ That really calls for a yes or no answer, just so I know where your analogy goes. Your Honor, I think in that case it would be a no that absolute immunity did not apply because the case has already been tried. The prosecution has ended. Okay. Well, the state of California will probably sit up at that representation. Why wouldn't that ‑‑ if that's your theory, why wouldn't that same argument apply to the direct appeal to the California Supreme Court? Well, Your Honor, at that point the judgment isn't final until the direct appeal has gone through, has been concluded. So I believe it would ‑‑ the absolute immunity would attach until. But your theory is that once the direct appeal then is concluded, any further steps that the prosecutor takes in litigation to effectuate the judgment of the court that the sentence of death be carried out is being done under some different office, not the office of prosecutor.  Well, Your Honor, I don't know, going back to what the Supreme Court looks and what occurred at common law, I don't know if we have any common law DNA testing proceedings that went on in this case where someone representing the government would defend that proceeding. We probably didn't have those in 1776, et cetera, or in England prior to the adoption by the United States. But the function of the prosecutor and what he's doing, don't we really ‑‑ we don't look at the name prosecutor, we look at what he's doing, correct? Correct, Your Honor. What she is doing. All right, we've exceeded your time for you, so we'll give you some rebuttal time and we'll hear from the other parties now. Thank you very much, Your Honors. Thank you, Your Honor. May it please the Court, Shannon Gustafson. I represent all of the appellees except Stephen Myers, who is represented by a separate counsel, and we are going to try to split our time evenly on this argument. In listening to counsel's argument, the way I understand it is they're now trying to reframe their claim as a constitutional challenge to Section 1405 as applied by California courts, saying that under 1405 a defendant could never get DNA testing to show evidence tampering. That's not an allegation they've made in the complaint, assuming they're seeking to amend the complaint to make that allegation. That's not even the interpretation that was given by the superior court in this case. So that raises a question. Let's assume that the constitutional question, as they originally framed it and as in the briefs, would land them either in collateral estoppel or worker-failment land, but then they have the option or possibility to reframe it by amendment. Assuming there's jurisdiction here, would it be an abuse of discretion for the court not to permit an amendment, that is the trial court, because there is the possibility of a claim as he framed it? I believe the claim as framed by appellant would be, the amendment would be, futile. All right, and if you could address that, that would be helpful. The superior court found in this case that plaintiff's allegations of evidence tampering were based on mere speculation, and it was because it was based on mere speculation that the defendant was denied the DNA testing. That's not the same as saying every single time a defendant claims that there's evidence tampering, he will be denied DNA testing. That's not the way the court interpreted the statute, and I'm not aware of any California court stating or interpreting in any manner that 1405 will always preclude a defendant from DNA testing if his grounds for DNA testing is evidence tampering, if he has support for that evidence tampering claim. So basically what you're saying is, as long as an inmate can make out a prima facie case of evidence tampering, he's entitled to 1405 DNA testing? If he meets all of the elements of 1405. Right, and your argument is that the superior court looked at his prima facie case and found, as a matter of fact, that he doesn't make out a prima facie case because of all of the prior litigation that's gone on and what the court heard in the San Diego proceeding. Yes, Your Honor. So in this situation, when you're challenging that mere speculation, there's no procedural due process right to evidence based on mere speculation. So what you're essentially challenging is the superior court's finding that defendants' claims were based on mere speculation, not the statute and the interpretation of the statute. And then the other claim that I heard counsel reference is that this is not barred by Worker-Feldman because of the wrongful conduct as pled by Ramos and Myers. I believe, as Your Honor addressed, that the allegations in this complaint are intrinsic fraud that were brought before the superior court, that were heard by the superior court, and decided by the superior court. There was no extrinsic fraud that took place with respect to the declaration of Myers, and therefore the exception for wrongful conduct doesn't apply to the Worker-Feldman situation in this case. And on that amendment, in any event, with respect to Defendant Ramos, there would be absolute immunity because he was presenting the state's case when he was opposing the Section 1405 motion. And there are numerous cases, I believe they're cited in our brief, that allow for absolute immunity in post-conviction proceedings. I don't think I have a case specifically on a 1405 proceeding, but there are several others with other post-convictions. So absolute immunity doesn't stop at the date of the conviction. So if his 1983 claim is perhaps he's added an element different than Skinner about the tampering. If his claim is unhinged from 1405, but it's basically that these two gentlemen conspired to tamper with the evidence, and that was to my detriment, and therefore I both want injunction or declaratory relief and damages, why wouldn't that be outside Worker-Feldman? Because those issues of tampering were already decided by the Superior Court, so I believe it would be inextricably intertwined with the attempt to challenge the State Court order. But is that collateral estoppel rather than inextricably intertwined? Because if he doesn't ask to overturn the 1405 ruling, but he's instead focusing on the two people who he thinks conspired to undo him in trying to get evidence, he could have an independent claim against them that wouldn't undo the Superior Court filing, couldn't he? I don't believe he could. I mean, in terms of a damages claim, that would be barred, at least with respect to Ramos for absolute prosecutorial immunity, and I believe Counsel for Myers could speak as to the liability there. And then in terms of an injunction, the remedy that's being sought is to have the DNA evidence, which would go back to the Worker-Feldman problem. Right, but in Skinner, they got around that, and that's the remedy that they asked for, is give us this specific kind of DNA or this specific kind of testing. So then you'd be back to why is this case different than Skinner? Because in Skinner, they were making a general constitutional challenge to the statute. That's not what's being pled here to the extent that plaintiff is claiming he can. It's about how the California courts interpret Section 1405. I've already addressed how I don't believe that works in this case given the court's ruling on the mere speculation. Counsel, what's your response to appellants' lawyers' argument about what they perceive as the strongest evidence of tampering with the evidence, which I think related to the preservative in the blood that was tested and to the separate blood taken from Cooper in a vial that is said to then have blood of two people? I believe those issues were already squarely before the Superior Court, and it was determined that it was mere speculation. And now what counsel is trying to do is have that undone in this court. Counsel, is that addressed in the Superior Court's order? I'm looking at page 19, starting at line 19. Do you have that before you? It says, in addition to testing and typing a portion of the stain from reference sample VV2 prepared from the vial of blood drawn from defendant following his 1983 arrest, Myers also tested and typed blood drawn from defendant at San Quentin State Prison on August 7, 2002. The profile from the reference card stain dated 1983 matched the profile from the newly obtained sample drawn at San Quentin in 2002. This result is inconsistent with defendant's assertion that the 1983 vial itself was contaminated prior to the creation of the reference blood stain VV2. Accordingly, it does not follow that the vial of defendant's blood drawn in 1983 is contaminated with DNA from a minor contributor simply because contamination was detected more than 20 years later during mitochondrial DNA testing of a reference stain VV2 prepared from that vial. Yes, Your Honor, that's where the court is addressing the vial of blood. So in that respect, then, we do have a factual finding rejecting counsel's claim that that second blood draw was tampered. Yes, Your Honor. One of the questions I also have is these inextricably intertwined cases that you refer to generally reach back to Ninth Circuit law before Skinner. And I think, well, as you know, Skinner to some degree was a surprise to the Ninth Circuit in terms of how one applies Rooker-Feldman. In your view, did Skinner affect the inextricably intertwined aspect of Rooker-Feldman and how the Ninth Circuit has been applying it over the years? I don't believe Skinner did affect that doctrine. I believe you take a look first at the claims being made and decide whether they are an appeal of the state court order or a de facto appeal. And if you make that determination, then you go into whether the other claims are inextricably intertwined. Now Skinner takes a different route. In that situation, you're finding that it's a general constitutional challenge, so it's not a de facto appeal. It's a separate claim that could be brought before the federal court. So you interpret his claim as really an as-applied claim in terms of how the statute is applied to him and how the superior court benchmarked his claim? Yes, Your Honor. All right. Do you want to reserve the remaining time for your colleague? Yes, Your Honor. Thank you. May it please the Court, my name is Christian Hogan. I represent Defendant Stephen Myers. I am as confused as the Court mentioned it was in terms of what the plaintiff's allegations are. The briefing and Skinner relies on an as authoritatively construed attack on the constitutional issue. I was somewhat surprised to hear the plaintiff today say that they are making a facial attack on the constitutionality. The 1405 procedures are more constitutionally generous than the federal procedures that were discussed in Osborne, and numerous district courts have held the 1405 procedures to be fair in terms of not so fundamentally unfair as to violate due process in connection with the Osborne Court's finding of the very limited right of convicted criminals to post-conviction DNA testing. But I'd also like to address the Court's concerns about whether or not plaintiff can fall under the Skinner Court doctrine. In Skinner, the plaintiff challenged as unconstitutional the Texas post-conviction DNA testing scheme as authoritatively construed by the Texas courts. They did not challenge the prosecutor's conduct or the adverse state decision. The plaintiff herein clearly and unequivocally challenged the conduct of the prosecutors and the adverse state decision. Just on that grounds alone, plaintiff cannot allege an exception under Skinner whereby they can come into the district court. The circuit courts have not broadly construed Skinner. In fact, the Alvarez Court in the 11th Circuit, which also spoke about the 2nd Circuit and 6th Circuit's decisions, determined that Skinner stands for the unremarkable proposition that the mere existence of a state court judgment relying on a statute does not bar a federal court action, entertaining an independent challenge to the constitutionality of that statute. That's what Skinner allows, and Alvarez determined that is not an unremarkable proposition. The problem is in Alvarez, as here, the as-applied challenge that the plaintiff is making boils down to a claim that the state court judgment itself caused him constitutional injury, and here, as there, it's abundantly clear that his claim would succeed only to the extent that the state court wrongly decided the issues. In Alvarez, as here, the plaintiff claimed that the court made erroneous findings of fact. That puts him squarely within the Rooker-Feldman bar. I also wanted to address plaintiff's continued reliance on Kosygian in connection with the challenge that there's a due process violation in connection with the Myers Declaration. Again, in Kosygian, there was extrinsic fraud only. Here, the plaintiff challenged the alleged fraud. In court, his own expert pointed out the exact same challenges that he is making to the declaration, that there were factual inaccuracies in it, and that it was inconsistent with his prior statement. The plaintiff himself alleges that the superior court adopted verbatim the Myers Declaration and denied the motion based on Myers Declaration, and that falls clearly within issue preclusion. The question is how do those, the constitutional challenge and the issue preclusion, are they conflated, and they aren't conflated. I wondered if the court is wanting any discussion about whether the district court allowed leave to amend or whether or not there's a final judgment. Because in reviewing this and in looking at the court's intent and the practical construction of that intent, it seemed clear that Judge Wilson was not allowing leave to amend because based on his finding that there was no subject matter jurisdiction in the district court, any finding of a leave to amend would have been a nullity, and that's under the Morongo Ninth Circuit case. And the only basis upon which there could be an amendment would be if there was a change needed as to form. The court clearly found that there were substantive defects in the jurisdiction and leave to amend should not be allowed, which leaves the court with the alternative of affirming the district court judgment in full, finding strictly there was no subject matter jurisdiction, and that's the end of the determination. If the court deems there's a possibility that there should be leave to amend, that's when the court looks at the merits and determines he has not come within the confines of Skinner and there can be no facial attack on 1405 because it violates no fundamental principle of justice. The question I have is whether he may have a surviving 1983 claim that relates solely to conspiracy between Myers and Ramos to tamper with the evidence. If he alleges that there's a conspiracy to tamper with the evidence but doesn't ask the court to order the evidence in effect under 1405, why wouldn't that be a freestanding 1983 claim that would be permissible? It wouldn't relate to Skinner. It wouldn't relate to Osborne. It would just be a 1983 claim against two gentlemen who he says acted outside of the confines of their role. Again, that's completely speculative on the part of the plaintiff, and the only factual allegation... Well, but see, we're on a motion to dismiss, so we're not on a summary judgment. My question is, could that be a viable claim? Under Iqbal, there can be no threadbare allegations of wrongdoing, and a simple statement of conspiracy not supported by any facts should not be allowed to survive a motion to dismiss. Wouldn't that claim be barred by Heck v. Humphrey? It would, I think, for the San Bernardino defendants because the only allegations with respect to Mr. Myers are in connection with the 1405 hearing, and the Osborne court has said that Heck v. Humphrey doesn't really come into play in a 1405 hearing because it doesn't have as the final chapter necessarily that the conviction will be overturned. That's true, because the only relief that he would be seeking, I suppose, would be to exclude that evidence, and then some other court would have to decide whether or not with that evidence excluded there was still enough to sustain the conviction or whether he'd be entitled to a new trial. Or whether he'd get new evidence, and that might change the outcome. Right, exactly, and that's why there's a narrow exception to Heck. I think Heck completely... As the plaintiff says, we're challenging 30 years of conduct. Certainly, the effect of that challenge is to null and void the conviction. So is that what Judge Wilson had in mind when he said in his order, essentially on the basis of the allegations against me, I'm dismissing for lack of jurisdiction, but I'm doing so without prejudice in the event that Cooper can somehow come up with some new set of facts that would prove I don't know what. More evidence of conspiracy that we haven't already considered and rejected. But the difficulty is then he says, oh, and FYI, footnote, he can't come up with anything. Right. Exactly. Which leaves us wondering, what did he mean? What did he mean? You know what I think he meant? I think he was offended, and I think he was going to add that footnote 5, because that really goes to the merits. It goes to, he said, basically assuming he is stating an as-applied challenge that he would be allowed to do under Skinner. Mere speculation, evidence tampering does not implicate a fundamental right and such that would violate due process. I suppose there would be an inconsistency in ordering a case dismissed with prejudice where you are ordering the dismissal based on lack of subject matter jurisdiction, because you're not deciding the merits of the underlying claim when you invoke subject matter jurisdiction. And I think that's what the court was doing when we look to the intent and give it a practical construction of why would Judge Wilson leave out that question of whether there was leave to amend or not. And it's because of that Morongo case that states, were he to make that ruling, it would be a nullity because he's already determined he doesn't have subject matter jurisdiction. And that's why he couldn't address the issue preclusion matters. And issue preclusion, as Skinner and Exxon and all those cases that we cited in footnote 20, issue preclusion lies beyond Rooker-Feldman. But I want to make one final point, if I may, that as narrowly as to Defendant Myers, if plaintiff is somehow allowed to make an as-applied challenge, he has made no allegations that Defendant Myers is a proper defendant in connection with a constitutional challenge as applied or facial to 1405. He's failed to allege any factual link that Myers has to the implementation or construction of Section 1405. And thus, he cannot state an as-applied claim as to Defendant Myers. Defendant Myers is a criminalist with the Department of Justice. He's not the district attorney. He's not the legislature. He's not the superior court. In no event should Mr. Myers be involved in this lawsuit in either a constitutional challenge or a direct challenge to his declaration, because the challenge was fully made in the superior court, and the superior court decided in favor of the Myers declaration. That would really go, it seems to me, maybe to the second claim for relief, which is the conspiracy. But then the question is, as you argued, whether collateral estoppel would then come in. Exactly. Okay. But you're saying if we conclude that it would, he's done. Myers is out of the case. Completely done, because he's not properly involved in any constitutional challenge cause of action. Okay. Thank you. Thank you. We'll put two minutes on the clock, if you will, because we took up your rebuttal time. Thank you very much, Your Honors. I just have one quick point to make about the Skinner case. Now there, the Texas inmate challenged the post-conviction DNA testing statute. That inmate had petitioned twice for testing, was twice rejected by the Texas trial court, and then that was affirmed by the Criminal Court of Appeals of Texas. But we don't have that. Do you have any other California case construing Section 1405 the same way as the Skinner case? Well, Your Honor, here, in Skinner, the Skinner court didn't require the plaintiff there to go and find an outside body of Texas law. It took the construction of those. But it had gone to the Texas Court of Criminal Appeals, which is the highest level of review for criminal cases in the state of Texas. Yes, Your Honor. And that gets back to the first question I asked you when you stepped up to the podium, and that is why did your predecessor counsel not seek a petition for a writ of mandate from the California Supreme Court? Because that would have given Mr. Cooper an opportunity to challenge in a way that would then trigger Skinner so that we could have an authoritative construction of the statute. But at this point, you're just challenging the Superior Court's application of the law to the facts of your case, as I understand it. Well, Your Honor, I don't think Skinner requires that more than just challenging the decision as decision rejecting the post-conviction DNA testing statute as kind of an example of state court decision making. Beyond that, I would point to the California Supreme Court's Richardson decision, which we cited in our briefs, which similarly interprets the statute in the same way the Superior Court did. Getting back to Defendant Myers and why he is what should be a defendant in any type of constitutional challenge, we don't know here who holds the DNA at this point. We haven't been allowed any discovery. In the Skinner case, the district attorney was determined to be the right defendant because he held the evidence. But that goes back to your evidence tampering claim I thought we were talking about. Assuming that we disagree with you on the evidence tampering claim and we conclude Mr. Cooper is done on that theory of defense and what remains is a as-applied or facial challenge to the statute, what does the criminalist have to do with the constitutional challenge? Well, Your Honor, I think in Skinner the district attorney was the correct defendant there because he held the DNA because there was a request for declaratory relief ordering DNA testing. So we do not know who holds the DNA here. I still don't understand what that has to do with the interpretation of the statute. Because to obtain the relief that was requested in Skinner, they had to see whoever holds the DNA. So you're just saying that you allege that he holds it for purposes of? At this point, yes, Your Honor, we don't know because we haven't been able to take any discovery. Right. I'm happy to take any questions now, but I know I've gone over my time. I don't have anything more. Further questions? Thank you. Thank you to all counsel for your argument this morning. The case of Cooper v. Ramos is submitted and we're adjourned.
judges: McKeown, Gould, Tallman